# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

Allen Gonzales,

      Plaintiff,

v.

Fremont Paving & Redi-Mix, Inc. d/b/a Ary Corporation,

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Allen Gonzales, by and through undersigned counsel, respectfully alleges for his Complaint and Jury Demand as follows:

### NATURE OF THE CLAIMS

Beginning in March 2020, COVID-19 began its widespread sweep across the United States. To limit the spread of the disease, Colorado's governor issued multiple executive orders and the federal government enacted legislation, such as the Families First Coronavirus Response Act, which entitled certain employees who were unable to work because of COVID-19 to paid leave. As COVID-19 spread, Defendant Fremont Paving & Redi-Mix, Inc. d/b/a Ary Corporation ("Ary Corporation") ignored state and federal laws and regulations put in place to protect workers from illness, ultimately resulting in at least one fatality from COVID-19 at the company.

On November 9, 2020, one of Ary Corporation's employees, Allen Gonzales, informed his supervisor of his exposure to COVID-19 after his godson tested positive for the virus. On November 23, 2020, Mr. Gonzales began to exhibit flu-like symptoms and his doctor instructed him to quarantine pending test results. Before Mr. Gonzales received those results, Defendant Ary Corporation fired him for being unable to work, despite knowing that he had been instructed by a medical professional to stay home.

## I.   PARTIES, JURISDICTION AND VENUE

1.   At all times mentioned herein, Plaintiff Allen Gonzales was a resident of and domiciled in the State of Colorado.

2.   At all times relevant to this action, Defendant Ary Corporation is a Colorado corporation that conducted business in the State of Colorado.

3.   At all times relevant to this action, Plaintiff Allen Gonzales was employed by Defendant Ary Corporation.

4.   At all times relevant to this action, Defendant possessed the power to hire and fire Plaintiff.

5.   Subject matter jurisdiction is conferred on this Court pursuant to 28 U.S.C §§ 1331 and 1367. This Action is authorized and instituted pursuant to 29 U.S.C. § 2601 et seq., including § 2617.

6.   Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). The events and omissions alleged herein occurred within the State of Colorado. At the time of the events and omissions giving rise to this litigation, all the parties resided or conducted business in Colorado.

## II.   ADMINISTRATIVE EXHAUSTION

7.    Plaintiff Allen Gonzales timely filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") against Defendant Ary Corporation alleging discrimination based on his disability as well as retaliation in violation of the Colorado Anti-Discrimination Act ("CADA").

8.    On December 6, 2021, Plaintiff Allen Gonzales received Notice of Right to Sue from the CCRD on his claims of discrimination and retaliation.

## III.   FACTUAL ALLEGATIONS

9.    Plaintiff Allen Gonzales began working for Ary Corporation located at 839 MacKenzie Ave., Canon City, CO 81215 in approximately May 2020.

10.    Mr. Gonzales's experience as a skillful and competent construction professional led him to apply for and accept a Machine Operator position with Ary Corporation.

11.    Fremont Paving & Redi-Mix, Inc. d/b/a Ary Corporation is a construction company located in Canon City.

12.    On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic.

13.    According to the Center for Disease Control ("CDC"), by the end of 2020, more than 350,000 individuals in the United States had died of COVID-19, and this is very likely an undercount due to the paucity of testing at the beginning of the pandemic.

14.    As the end of 2020 dawned, COVID-19 became one of the leading causes of death in Colorado, taking the lives of over 5,300 Coloradans in that first year of the pandemic.

15.     To halt the spread of COVID-19 and to protect workers, Congress, at the federal level, passed the Emergency Paid Sick Leave Act ("EPSLA") as part of the Families First Coronavirus Response Act ("FFCRA"), amending the Family and Medical Leave Act ("FMLA") to allow for emergency paid or unpaid leave depending on the size of the employer.

16.     On April 26, 2020, Governor Jared Polis issued Executive Order D 2020 044 directing, inter alia, the CCRD to provide guidance to prevent discrimination in the workplace related to COVID-19, including mandating the provision of accommodations.

17.     In Order D 2020 044, Governor Polis further directed the Colorado Department of Public Health and Environment ("CDPHE") to issue public health orders limiting the spread of COVID-19 in the workplace and tasked the Colorado Department of Labor and Employment ("CDLE") to promulgate temporary emergency sick leave rules at the state level.

18.     Furthermore, in Executive Order D 2020 044, Governor Polis also directed all individuals who are sick or who test positive for COVID-19 to stay at home.

19.     On June 1, 2020, Governor Polis issued Executive Order D 2020 091, again directing, inter alia, the CCRD to provide continued guidance to prevent discrimination in the workplace related to COVID-19, including mandating the provision of accommodations.

20.     In Order D 2020 091, Governor Polis further directed the CDPHE to advise Coloradans to get tested for COVID-19 if they were experiencing flu-like symptoms or if they were sick, and to stay at home until at least three days after any fever and other symptoms subsided.

21.     On October 6, 2020, Governor Polis issued Executive Order D 2020 213, which extended the directives issued in the previous Executive Order D 2020 091.

22.     On October 30, 2020, Governor Polis issued Executive Order D 2020 235 which again directed, inter alia, the CCRD to provide continued guidance to prevent discrimination in the workplace related to COVID-19, including mandating the provision of accommodations.

23.     On November 28, 2020, Executive Order D 2020 265 extended the directives issued in Executive Order D 2020 235. Executive Order D 2020 265 was in place throughout December 2020 and did not expire until December 28, 2020.

24.     On July 14, 2020, the Healthy Families and Workplaces Act ("HFWA") mandated that all employers in the state of Colorado, regardless of size, provided paid leave to their employees for sickness related to COVID-19, even if said employee would not be entitled to paid leave under federal legislation.

25.     Despite the plethora of executive orders, emergency rules, guidance, and other sources of law, Ary Corporation did not enforce safety measures adequately at its worksites, including failing to ensure proper social distancing or that employees were wearing personal protective equipment such as masks.

26.     Ary Corporation did not share with its employees any information about COVID-19 safety procedures and guidelines, even when employees asked for such information.

27.     Ary Corporation did not inform its employees of their entitlement to paid sick leave in the event of exposure to or the contracting of COVID-19.

28.     On November 16, 2020, an Ary Corporation superintendent passed away due to COVID-19 complications.

29.     During November 2, 2020, through November 5, 2020, Mr. Gonzales spent time in close contact with his godson, who tested positive for COVID-19 four days later.

30.     On Monday, November 9, 2020, Mr. Gonzales received the news of his godson's diagnosis and informed his Supervisor, Jack Herrell.

31.     Mr. Herrell was Mr. Gonzales's direct supervisor.

32.     Mr. Herrell's position at Ary Corporation according to the Ary Corporation website is Crusher Superintendent.

33.     Mr. Herrell instructed Mr. Gonzales to go and get tested for COVID-19.

34.     On November 10, 2020, Mr. Gonzales's doctor tested him for COVID-19 and informed him that he needed to quarantine until he received his results.

35.     On November 13, Mr. Gonzales texted Mr. Herrell a link to the Families First Coronavirus Response Act ("FFCRA") website and requested paid leave while he awaited his results.

36.     On November 13, Mr. Gonzales texted the same link to the FFCRA website to Ary Corporation's Human Resources Manager Shannon Skubal.

37.     Mr. Gonzales did not receive a response from Mr. Herrell or Ms. Skubal regarding the FFCRA leave he was entitled to.

38.     Mr. Gonzales then texted Mr. Herrell a picture of a doctor's note dated November 10, 2020, that stated, "Allen Gonzales is currently under my medical care and may return to work as outlined below pending Covid results. Please excuse Allen for 4 day(s). He may return to full schedule on 11/15/2020."

39.     Mr. Gonzales also texted the medical documentation to Jodi Schreiber, Ary Corporation's Chief of Operations.

40.     Ary Corporation paid Mr. Gonzales incorrectly the first time he took sick leave while awaiting COVID-19 test results between November 9-13, 2020.

41.     Mr. Gonzales's normal rate of pay was nineteen dollars an hour.

42.     During November 9-13, 2020, for the full week while Mr. Gonzales took sick leave, Mr. Gonzales's pay stub reflected that Ary Corporation reduced his pay by seven dollars an hour.

43.     Ary Corporation owed Mr. Gonzales wages for thirty-nine hours.

44.     Ary Corporation paid Mr. Gonzales at the rate of twelve dollars an hour as opposed to his normal rate of pay at nineteen dollars an hour.

45.     On Sunday, November 15, 2020, Mr. Gonzales's doctor informed him that his COVID-19 test had come back negative.

46.     Mr. Gonzales did not physically receive a copy of the test results until the following day, November 16, when he returned to work.

47.     When Mr. Gonzales asked his doctor how it could be possible that his results had come back negative, since he had spent an extended period of time in close contact with his godson who tested positive, his doctor replied that COVID-19 tests vary in accuracy, and that it was possible that he was still positive, but the sample size that was tested did not have enough COVID-19 particles in it.

48.     Mr. Gonzales worked the rest of the week of November 16, 2020. Mr. Gonzales then worked another full day on Monday, November 23, 2020.

49.     On the evening of November 23, Mr. Gonzales began feeling ill, and the following day he started exhibiting flu-like symptoms.

50.     Mr. Gonzales informed a colleague named Bobby that he felt unwell on November 24, 2020, and asked Bobby to share this information with their site supervisor, Gary.

51.     After learning the information, Gary instructed Mr. Gonzales to get another COVID-19 test or quarantine for fourteen days.

52.     The next day, Mr. Gonzales went to the doctor, was tested for COVID-19, and the doctor gave him a note to quarantine beginning November 25, 2020, pending the results of his COVID-19 test.

53.     The Ary Corporation still owed money to Mr. Gonzales for the wages that were deducted from his pay the week of November 9, 2020. So, Mr. Gonzales contacted Mr. Herrell, Ms. Schreiber, and Ms. Skubal the morning of November 25, inquiring about his missing pay and in search of an explanation.

54.     The Ary Corporation evaded Mr. Gonzales's inquiries and Ms. Schreiber told him to confront his supervisor.

55.     Mr. Gonzales explained that "I do every time this happens and then it's call Shannon and then Shannon says she will figure it out then [I] get no response."

56.     Mr. Gonzales voiced in this text that "This seems to be a personal issue now feel like discrimination here. Laws are being broke rights are being violated."

57.     Shortly after, on November 25, before Mr. Gonzales even received the results of his second test, Mr. Herrell called Mr. Gonzales to inform him that he was being terminated.

58.     On the phone call, when Mr. Gonzales asked Mr. Herrell why he was being fired, Mr. Herrell stated that it was because Mr. Gonzales was unable to work due to quarantining again.

59.     Mr. Herrell unequivocally stated that Mr. Gonzales's absence due to COVID-19 was the reason for his termination.

60.     Before his termination, Mr. Gonzales had never been written up or formally disciplined.

61.     Mr. Gonzales asked Mr. Herrell how it was that he was being terminated when his own site supervisor had instructed him the day before to get tested for COVID-19 or quarantine for fourteen days, and his medical provider who had administered the COVID-19 test ordered him to quarantine pending test results.

62.     Mr. Herrell did not respond to Mr. Gonzales's question.

63.     Mr. Gonzales had never had an issue requesting or receiving time off in the past.

64.     Previously, to request time off, Mr. Gonzales needed only to contact his supervisor to request the time off, and after consulting with the superintendent, would receive permission from his supervisor for time off, so long as there was adequate staffing.

65.     Earlier that year, for example, Mr. Gonzales had injured his foot. His supervisor told him to take a day off and go see a doctor and Mr. Gonzales had no further problems.

66.     Later on November 25, seeing that he had just been terminated for taking medical leave, Mr. Gonzales texted a picture of the doctor's note from that day, which indicated that he was to isolate pending the results of his COVID-19 test, to Mr. Herrell, Ms. Schreiber, and Ms. Skubal. Mr. Gonzales reiterated that he was instructed by his site supervisor to get tested.

67.     Mr. Herrell, Ms. Schreiber, and Ms. Skubal did not respond to Mr. Gonzales's text messages regarding his medical leave.

68.    Later that day, Mr. Gonzales learned that his other supervisor, Michael "Doc" Doctor, who he had been in close contact with five days prior, had received a positive test result for COVID-19.

69.    In December, Mr. Gonzales received the results of his second COVID-19 test from his doctor.

70.    Throughout his employment, Ary Corporation paid Mr. Gonzales every Friday.

71.    Friday, November 27, 2020, Mr. Gonzales did not receive a direct deposit for the work he had completed that week, including Monday, November 23, when he worked a full day, and his pre-termination quarantine time on Tuesday.

72.    Mr. Gonzales texted Mr. Herrell about his withheld pay for that week on Friday, November 27, and he received no response.

73.    On November 30, Mr. Gonzales tried contacting Mr. Herrell again and Ms. Skubal about the pay issue.

74.    Mr. Herrell once again did not respond, and Ms. Skubal responded that Mr. Gonzales would need to contact Ms. Schreiber.

75.    Mr. Gonzales then called Ms. Schreiber asking why he had not received his wages for that week's pay period. She replied that Mr. Gonzales's pay was being withheld because he "owed" the company for his previous quarantine, given that he tested negative.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
Emergency Paid Sick Leave Act/Families First Coronavirus Response Act/Family
and Medical Leave Act
29 U.S.C. § 2601 et seq. as amended by Public Law 116-127
Interference/Denial of Entitlement

76.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

77.    In 2020, Congress enacted the Families First Coronavirus Act ("FFCRA"), including Emergency Paid Sick Leave Act and Emergency Family and Medical Leave Expansion Act, which entitled employees who were unable to work because of COVID-19 to paid leave for companies with less than 500 employees and unpaid leave pursuant to the Family and Medical Leave Act ("FMLA") for companies with more than 500 employees.

78.    The FFCRA was in effect during all times relevant to Mr. Gonzales's claims.

79.    The FFCRA provided that an employer shall provide to each employee employed by the employer paid sick time to the extent that the employee was unable to work due to a need for leave because the employee had been advised by a health care provider to quarantine due to concerns related to COVID-19 or the employee was experiencing symptoms.

80.    Both the FFCRA and FMLA prohibit interference. To establish interference an employee must show that: (1) the employee was entitled to sick leave; (2) an adverse action by the employer interfered with the employee's right to take sick leave, and (3) the employer's action was related to the exercise or attempted exercise of the employee's statutory rights.

81.    On November 9, 2020, Mr. Gonzales informed Mr. Herrell that he had been exposed to COVID-19 and he was told to quarantine.

82.    On November 24, 2020, Mr. Gonzales's site supervisor instructed Mr. Gonzales to quarantine and get another COVID-19 test when he exhibited symptoms of COVID-19.

83.    On November 25, 2020, Mr. Herrell fired Mr. Gonzales because Mr. Gonzales could not work again due to his need to quarantine.

84.     Mr. Gonzales was not paid for and did not receive the paid leave he was entitled to.

85.     Defendant Ary Corporation violated both the FFCRA and FMLA when it interfered with Mr. Gonzales's right to emergency paid sick leave.

86.     The unlawful employment practices complained of in the foregoing paragraphs were intentional.

87.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the protected rights of Mr. Gonzales.

88.     Ary Corporation did not act in good faith when it terminated Mr. Gonzales and Ary Corporation did not reasonably believe they were following the law.

**SECOND CLAIM FOR RELIEF**
**Emergency Paid Sick Leave Act/Families First Coronavirus Response Act/Family and Medical Leave Act**
**29 U.S.C. § 2601 et seq. as amended by Public Law 116-127**
**Retaliation**

89.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

90.     The FFCRA was in effect during all times relevant to Mr. Gonzales's claims.

91.     Both the FFCRA and FMLA prohibit retaliation.

92.     To establish a retaliation claim under the FMLA and the FFCRA, an employee must show that: (1) they engaged in a protected activity; (2) the employer took an action that a reasonable employee would have found materially adverse; and (3) there is a causal connection between the protected activity and the adverse action.

93.     Mr. Gonzales was not paid his regular rate of pay when he was first ordered to quarantine.

94.     Mr. Gonzales returned to work on November 16, 2020, but on the evening of November 23, 2020, he began feeling ill, and on the following day his symptoms became worse.

95.     On November 24, 2020, Mr. Gonzales's site supervisor told him to quarantine and get another COVID-19 test.

96.     On November 25, 2020, after receiving a second COVID-19 test and before receiving the results of that test, Mr. Herrell called Mr. Gonzales to inform him that he was being terminated.

97.     Mr. Herrell stated that the reason for the termination was because Mr. Gonzales was unable to work because he had been instructed again to quarantine.

98.     Defendant Ary Corporation violated the FFCRA and FMLA when it retaliated against Plaintiff by terminating him while on COVID-19 medical leave.

99.     The unlawful employment practices complained of in the foregoing paragraphs were intentional.

100.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the protected rights of Mr. Gonzales.

101.     Defendant Ary Corporation did not act in good faith when it terminated Mr. Gonzales and Ary Corporation did not reasonably believe they were following the law.

### THIRD CLAIM FOR RELIEF
### Colorado Anti-Discrimination Act
### C.R.S. § 24-34-301 et seq.
### Discrimination on the Basis of Disability Including Failure to Accommodate

102.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

103.    Plaintiff has exhausted remedies by filing charges with the CCRD against Defendant Ary Corporation.

104.    The CCRD and EEOC confirmed that COVID-19 may be considered a disability for the purposes of antidiscrimination laws.

105.    CADA prohibits employers from discriminatory or unfair employment practices against employees who are showing symptoms of COVID-19 or who have been in contact with a known positive case of COVID-19.

106.    Discriminatory or unfair employment practices include a failure to hire, discharge, promote or remote, harass or decisions related to compensation, terms, conditions, or privileges of employment.

107.    Mr. Gonzales first exhibited COVID-19 related symptoms on November 23, 2020, and the symptoms remained until his termination on November 25, 2020.

108.    Defendant Ary Corporation terminated Mr. Gonzales because of COVID-19 related illness.

109.    Defendant did not provide reasonable accommodations to Mr. Gonzales as required by law.

110.    Defendant discriminated against Mr. Gonzales based on his disability or because Defendant regarded Mr. Gonzales as disabled.

111.    The effect of the practices complained of in the foregoing paragraphs has been to deprive Mr. Gonzales of equal employment opportunities because of his disabilities and/or because of the need to provide reasonable accommodations for his disabilities.

112.    The effects of the practices complained of in the paragraphs above have been to inflict emotional pain, suffering, and inconvenience upon Mr. Gonzales and to deprive him of the financial and other benefits of working at Ary Corporation.

113.    The unlawful employment practices complained of in the foregoing paragraphs were intentional.

114.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the protected rights of Mr. Gonzales.

**FOURTH CLAIM FOR RELIEF**
**Colorado Anti-Discrimination Act**
**C.R.S. § 24-34-301 et seq.**
**Retaliation**

115.    Plaintiff incorporates by reference all previous paragraphs of the Complaint as if fully set forth herein.

116.    Defendant retaliated against Plaintiff Allen Gonzales in violation of CADA.

117.    The CADA states "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." C.R.S. § 24-34-402(IV).

118.    The Tenth Circuit and others have all "recognized that a request for accommodation can constitute protected activity supporting a retaliation claim." *Foster v. Mountain Coal Co.*, LLC, 830 F.3d 1178, 1188 (10th Cir. 2016).

119.    Mr. Gonzales returned to work on November 16, 2020, but on the evening of November 23, 2020, he began feeling ill, and on the following day his symptoms had worsened.

120.    On November 24, 2020, Mr. Gonzales's site supervisor told him to quarantine and get another COVID-19 test.

121.    On November 25, 2020, after receiving the second COVID-19 test and before receiving the results of that test, Mr. Herrell called Mr. Gonzales to inform him that he was being terminated.

122.    Mr. Gonzales asked why he was being terminated and Mr. Herrell stated that it was because he was not able to go to work and needed to quarantine again.

123.    Ary Corporation clearly stated that Mr. Gonzales's absence was the reason for the termination.

124.    Mr. Gonzales was legally entitled to time off as an accommodation for his COVID-19 disability.

125.    The unlawful employment practices complained of in the foregoing paragraphs were intentional.

126.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the protected rights of Mr. Gonzales.

## FIFTH CLAIM FOR RELIEF
### Wrongful Discharge in Violation of Public Policy

127.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

128.    Defendant terminated Mr. Gonzales in violation of public policy as set forth in numerous statutes, guidelines, regulations, and executive orders about or relating to COVID-19, including but not limited to Executive Order D 2020 044 ("I direct all individuals who are sick or who test positive for COVID-19 to Stay at Home except as necessary to care for themselves or

seek medical care.") and ("Employers must provide reasonable accommodation and are prohibited from discriminating against employees who are showing symptoms of COVID-19 or who have been in contact with a known positive case of COVID-19,") Executive Order D 2020 265, and other applicable statutes, codes, orders, regulations, guidance, and other sources of public policy. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 104 (Colo. 1992); *Kearl v. Portage Envtl., Inc.*, 205 P.3d 496, 499 (Colo. App. 2008); *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 524–25 (Colo. 1996).

129.    The CCRD has also specified that "[e]mployers are prohibited from discriminatory or unfair employment practices against employees who are showing symptoms of COVID-19 or who have been in contact with a known positive case of COVID-19. Discriminatory or unfair employment practices include a failure to hire, discharge, promote or remote, harass or decisions related to compensation, terms, conditions or privileges of employment."

130.    Defendant's conduct described herein was attended by circumstances of fraud, malice, or willful and wanton conduct within the meaning of C.R.S. § 13-21-102.

131.    As a direct result of Defendant's actions, Mr. Gonzales has suffered injuries, damages, and losses in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### Healthy Families and Workplaces Act
### C.R.S. § 8-13.3-401 et seq.
### Denial of Entitlement

132.    Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

133.    The Colorado legislature enacted the Healthy Families and Workplaces Act ("HFWA") in July 2020.

134.     The HFWA specifies that all employers in the state of Colorado shall comply with the federal "Emergency Paid Sick Leave Act" and "Families First Coronavirus Response Act, Pub. L. 116-127."

135.     The HFWA further specifies that "on or after July 15, 2020, through December 31, 2020, each employer in the state, regardless of size, shall provide paid sick leave in the amount and for the purposes provided in the federal "Emergency Paid Sick Leave Act" in the "Families First Coronavirus Response Act", PUB. L. 116-127, to each employee who is not covered under the "Emergency Paid Sick Leave Act"."

136.     Defendant Ary Corporation violated the HFWA when it interfered with Mr. Gonzales's right to emergency paid sick leave.

137.     The unlawful employment practices complained of in the foregoing paragraphs were intentional.

138.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the protected rights of Mr. Gonzales.

**SEVENTH CLAIM FOR RELIEF**
**Healthy Families and Workplaces Act**
**C.R.S. § 8-13.3-401 et seq.**
**Retaliation**

139.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

140.     The HFWA in section 8-13.3-407(2)(a) states, "An employer shall not take retaliatory personnel action or discriminate against an employee or former employee because the person has exercised, attempted to exercise, or supported the exercise of rights protected under this part 4, including the right to request or use paid sick leave pursuant to this part 4."

141.    Defendant Ary Corporation violated the HFWA when it retaliated against Plaintiff by terminating him while on COVID-19 medical leave.

142.    The unlawful employment practices complained of in the foregoing paragraphs were intentional.

143.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the protected rights of Mr. Gonzales.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests this Court enter judgment for the following relief:

1.    Actual economic damages as established at trial;

2.    Compensatory damages, including but limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

3.    Liquidated damages as allowed by law for all such claims where available;

4.    Punitive damages as allowed by law for all such claims where available.

5.    Pre-judgment and post-judgment interest at the highest lawful rate;

6.    Appropriate tax-offset;

7.    Attorneys' fees and costs; and

8.    Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

DATED: February 25, 2022

**RATHOD | MOHAMEDBHAI LLC**

_/s/ Iris Halpern_

Iris Halpern
2701 Lawrence St., Suite 100
Denver, CO 80205
(303) 578-4400 (t)
(303) 578-4401 (f)
ih@rmlawyers.com

ATTORNEY FOR PLAINTIFF